176 N.J. Super. 307 (1980)
422 A.2d 1331
PERTH AMBOY GENERAL HOSPITAL, PETITIONER-RESPONDENT,
v.
CITY OF PERTH AMBOY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 1980.
Decided October 31, 1980.
*309 Before Judges FRITZ, POLOW and JOELSON.
Edward G. Rosenblum argued the cause for appellant (Rosenblum & Rosenblum, attorneys).
Oliver R. Kovacs argued the cause for respondent (Kovacs, Horowitz & Rader, attorneys).
The opinion of the court was delivered by JOELSON, J.A.D.
The City of Perth Amboy appeals from a determination in the Tax Court holding certain properties of Perth Amboy General Hospital exempt from real property taxation. We affirm.
The hospital filed petitions of appeal to the Division of Tax Appeals from judgments of the Middlesex County Board of Taxation. These petitions sought exemptions for the years 1975 through 1978 for various properties owned by the hospital in the city. There were 26 petitions in all. A group of 20 involved units in a condominium located a mile and one-half from the hospital. The remaining six petitions involved properties in the immediate vicinity of the hospital. All the 26 properties were held to be exempt by the judge.
The 20 condominium units are part of a development containing 38 units. They were purchased to house resident and intern *310 physicians and their families. These housing accommodations consist of three bedrooms, living room, dining room and kitchen. Each unit is an air-conditioned duplex, containing a basement and small back yard, and is provided to the physicians free of charge. They and their families share with the other occupants a swimming pool, parking lot and playground, the proportionate maintenance costs of which are paid by the hospital and the other nonhospital occupants.
The principal question to be resolved is whether these 20 units qualify for tax exemptions. N.J.S.A. 54:4-3.6 provides exemptions for "all buildings actually and exclusively used in the work of associations and corporations organized exclusively for ... hospital purposes...." The city does not dispute that the hospital is an association or corporation organized exclusively for hospital purposes, but it urges that the 20 units owned by the hospital are not actually and exclusively used in the work of the hospital. To support this contention, it relies on two points. First it urges that since the condominiums are located 1 1/2 miles from the hospital complex they are not reasonably related to a hospital purpose. In the alternative it argues that since the premises are condominium units, there cannot be actual and exclusive use for hospital purposes as required by statute.[1]
In support of its point that the condominium units cannot be held reasonably related to a hospital purpose, the city relies entirely on the fact that they are located a mile and a half from the hospital itself. To support this argument, the city cites Long Branch v. Monmouth Medical Center, 138 N.J. Super. 524, *311 532 (App.Div. 1976), aff'd o.b. 73 N.J. 179 (1977). Initially, we observe that the discussion in that case of the proximity of the facilities to the hospital was with respect to consideration of the "actually and exclusively used" requirement rather than with regard to whether any hospital purpose was being served, the subject of the city's first argument here. We recognize that the two aspects have much in common, however, and that the Monmouth Medical Center case impinges on the question of hospital purpose. Although we did not deal specifically with hospital purpose, being aware that the building in that case was a block and a half removed from the hospital itself, we found that it accommodated "housing facilities ... in or near the hospital."
In the matter before us we have considered all the factors necessary for our determination, including the fact that the condominium involved is located not a block and a half, but a mile and a half from the hospital. We have also considered such uncontradicted testimony as that regarding the fact that residents and interns increasingly now are married persons rather then single persons (as they were as short a time ago as 15 years), and that adequate housing in the general Perth Amboy area is extremely difficult to obtain. Accordingly, we agree with the determination that, all circumstances considered, the distance separating the condominium from the hospital is not sufficient by itself to deprive the condominium of a "hospital purpose."
In its brief, the city argues against exemption by reason of the distance of the housing facility from the hospital. However, in these days of complex demography, serious urban housing shortages and increased sociological emphasis on the necessity for both preventive and curative health care, more must be considered than the mere 1 1/2 mile distance of the facilities from the hospital in determining whether that distance alone would deprive a building of its status of being used for a hospital purpose.
*312 The city's second point is that since the 20 condominium units are part of a 38-unit complex and since the hospital thereby shares with the individual owners of the remaining 18 units "an undivided interest in the underlying land and common elements, which include a swimming pool, playground and parking lot," they do not meet the test of actual and exclusive use set by N.J.S.A. 54:4-3.6. To counter this, the hospital relies on N.J.S.A. 46:8B-1 et seq., the Condominium Act enacted in 1969. N.J.S.A. 46:8B-4 provides as follows:
Each unit shall constitute a separate parcel of real property which may be dealt with by the owner thereof in the same manner as is otherwise permitted by law for any other parcel of real property.
N.J.S.A. 46:8B-19 provides as follows:
All property taxes, special assessments and other charges imposed by any taxing authority shall be separately assessed against and collected on each unit as a single parcel, and not on the condominium property as a whole. Such taxes, assessments and charges shall constitute a lien only upon the unit and upon no other portion of the condominium property. All laws authorizing exemptions from taxation or deductions from tax bills shall be applicable to each individual unit to the same extent they are applicable to other separate property.
These two sections clearly indicate a legislative design to treat each unit in a condominium as separate property and to accord each unit the same tax exemption applicable to other separate property. Thus viewed a condominium unit is for tax purposes an exclusive and separate unit despite the fact that by definition any condominium owner shares undivided interests in common with others.
The city in its brief misconstrues the amendment of L. 1977, c. 370, to N.J.S.A. 54:4-3.6 to involve hospitals. The fact of the matter is that in 1977, several years after enactment of the Condominium Act, the Legislature amended N.J.S.A. 54:4-3.6 to add a provision that with regard to buildings actually used for colleges, schools, academies or seminaries, if any portion of such buildings are leased to profit-making organizations or otherwise used for nonexempt purposes, said portion shall be subject to taxation, but that the remaining portion shall be exempt. It did not make a like change respecting hospitals. Conceivably the *313 argument might be made that a conflict with N.J.S.A. 46:8B-19 exists and that since the amendment to N.J.S.A. 54:4-3.6 constitutes the latest expression of the Legislature, it must prevail to the exclusion of the exemption. However, several considerations persuade to the contrary.
Since the amendment to the tax exemption legislation was enacted several years subsequent to the Condominium Act, N.J.S.A. 46:8B-1 et seq., it must be presumed that the Legislature acted with full knowledge of the Condominium Act when it amended the tax exemption legislation. Jacobs v. N.J. State Authority, 54 N.J. 393, 401 (1969); State v. Federanko, 26 N.J. 119, 129 (1958); C.J.S., Statutes, § 316. To ascribe to this amendment (which dealt only with colleges, schools, academies and seminaries) the purpose of diminishing the effect of the Condominium Act, insofar as hospitals are concerned would require the implication of a repealer of the Condominium Act, at least with respect to hospitals. Implied repealer is not favored. C.J.S., Statutes, § 288. This disfavor has been firmly expressed by New Jersey courts. Brewer v. Porch, 53 N.J. 167 (1969); Labor Dep't v. Cruz, 45 N.J. 372 (1965). Indeed, it has been stated that the legislative purpose to repeal by implication must be free of reasonable doubt. Swede v. Clifton, 22 N.J. 303, 317 (1956).
Furthermore, the 1977 amendment is perfectly compatible with N.J.S.A. 46:8B-4 which declared a condominium unit to be a separate parcel of real property, and with N.J.S.A. 46:8B-19 which bestowed on each unit the same tax exemption granted to other separate property. Thus, each condominium unit is to be treated separately under N.J.S.A. 54:4-3.6 for tax exemption purposes, and if each unit is used actually and exclusively for hospital purposes, each is exempt from taxation. Nor do we perceive any legislative intention to the contrary because the word "buildings" was continued to be used in the 1977 amendment. *314 Were we to deny the exemption to a hospital, a religious congregation likewise would be stripped of its exemption if, instead of supplying a house to a clergyman, it provided him with a condominium unit. We are persuaded that the Legislature never intended such a result when it amended N.J.S.A. 54:4-3.6. However, we need not here decide this particular issue respecting the possibility of a conflict between the Condominium Act and the exemption statute since it was not raised by the city. Cannon v. Krakowitch, 54 N.J. Super. 93, 96 (App.Div. 1959).
It is undoubtedly a settled rule of law that statutes granting exemptions from taxes must be strictly construed against those claiming such exemptions. Boys Club of Clifton, Inc. v. Jefferson, 72 N.J. 389 (1977); Bloomfield v. Academy of Medicine of N.J., 47 N.J. 358 (1966); Princeton University Press v. Princeton, 35 N.J. 209 (1961); Harvey Cedars v. Sisters of Charity of St. Elizabeth, 163 N.J. Super. 564 (App.Div. 1978). However, the fact that statutes granting exemptions are to be strictly construed against those seeking those exemptions does not justify distorting the language of a statute or the legislative intent. Pingry Corp. v. Hillside, 46 N.J. 457 (1966); Boys Club of Clifton, at 378; Princeton University Press at 214.
With respect to the six properties in the immediate vicinity of the hospital, the judge found that all were entitled to exemptions. Our review of the record satisfies us that the findings on which these conclusions were reached might reasonably have been reached on sufficient credible evidence in the whole record, Mayflower Securities v. Bureau of Securities, 64 N.J. 85 (1973), and those conclusions are in accord with existing law. Although some of the uses are transitory in connection with an expansion program, we are satisfied they satisfy the test of actual and exclusive hospital use.
Affirmed.
NOTES
[1] The hospital provides sleeping rooms in the hospital premises for those resident physicians and interns who are on duty for rotating 24-hour shifts. However, the city has not argued that the fact that the dwelling units are family occupied deprives them of their status as buildings actually or exclusively used for hospital purposes. It apparently accepts the hospital's contention that since the hospital required the type of described housing in order to attract qualified residents and interns for service, this housing serves a hospital purpose. In view of this, we need not explore that aspect of the question further.